EDITH BROWN CLEMENT, Circuit Judge,
concurring in part and dissenting in part.
Although I agree with the majority holding affirming the district court’s denial of class certification, I do not agree we have jurisdiction to reach that issue. Because the plaintiffs have received all they are entitled to, this case is moot with respect to plaintiffs’ claims for statutory attorneys’ fees. As the majority correctly observes, the plaintiffs also lack standing to pursue injunctive relief. Consequently, I respectfully DISSENT from Section Al and Section B and CONCUR in Sections A2 and A3.
STANDARD OF REVIEW
Defendants successfully moved to dismiss in the district court due to a lack of subject-matter jurisdiction. We review the factual findings of the trial court for clear error and the legal conclusions de novo. MDPhysicians & Assocs. v. State Bd. of Ins., 957 F.2d 178, 181 (5th Cir.1992). Plaintiffs are “required to prove the existence of subject-matter jurisdiction by a preponderance of the evidence.” Middle S. Energy, Inc. v. City of New Orleans, 800 F.2d 488, 490 (5th Cir.1986).
DISCUSSION
The facts and procedural history are unique and complex. Plaintiffs concede that they are no longer seeking damages but are instead seeking only statutory attorneys’ fees. At this point in the litigation, three things are abundantly clear. First, the named plaintiffs have received well over their claimed treble damages through the Stewart Settlement. Second, the only thing that can be gained in continuing this litigation is attorneys’ fees and costs, which plaintiffs’ attorneys admit will not go to the plaintiffs themselves. And third, any trial to award attorneys’ fees and costs would only exponentially increase the attorneys’ fees in question— with no more awarded to the plaintiffs.
Standing is a constitutional requirement under Article III. See Fla. Contractors v. Jacksonville, 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). “Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).” United States Parole Comm’n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). In other words, a party must have standing at all points in the litigation to continue to litigate the case, or else it becomes moot. To have Article III standing a plaintiff must show an “injury in fact” and “must have a personal stake in the outcome.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted). To avoid mootness, the plaintiffs’ personal stake must continue throughout the litigation. Envtl. Conservation Org. v. City of Dallas, 529 F.3d 519, 524-25 (5th Cir.2008).
Here, plaintiffs cannot demonstrate any personal stake in the continuance of the litigation following the Stewart Settlement because they have none. Their claimed damages have been met multiple times over by the Stewart Settlement. The case, as it relates to the plaintiffs, is moot because their injury has been remedied.
The Supreme Court has previously stated that “a plaintiff cannot achieve standing *352 to litigate a substantive issue by bringing suit for the cost of bringing suit.” Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 107-08, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The plaintiffs’ attorneys’ argument for continuing this case for fees is nearly identical to that which was rejected in Steel Co., where the Court ruled that attempting to recoup statutory costs was not enough to confer standing. In that case, the money recovered would have gone to the United States Treasury, whereas here, any further money recovered would go to the attorneys. That distinction is of little merit because the Court has already stated that an “interest in attorney’s fees is ... insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.” Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (citing Diamond v. Charles, 476 U.S. 54, 70-71, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986)). To have a ease or controversy, “[t]he litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.” Steel Co., 523 U.S. at 107, 118 S.Ct. 1003. Where “the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements ... obtained, solely in order to obtain reimbursement of sunk costs." Lewis, 494 U.S. at 480, 110 S.Ct. 1249 (emphasis added).
Although there is no Supreme Court precedent dealing with this issue in the context of a Clayton Act violation, the plaintiffs bear the burden of demonstrating that the litany of Supreme Court cases on similar statutory costs and attorneys’ fees are inapplicable. They fail to do so. Their strongest argument for continuing with this litigation is a misreading of a prior case in this circuit, Sciambra, which sat in a markedly different procedural posture from the case now before us. Sciambra v. Graham News, 892 F.2d 411 (5th Cir.1990). Sciambra dealt with statutory costs and attorneys’ fees under the Clayton Act, but the court had already found antitrust liability against the defendants through a default judgment. Since liability was already established, statutory attorneys’ fees were awarded. Despite arguments to the contrary by the plaintiffs and the majority, Sciambra is not controlling of the outcome of this case. What the attorneys here request is completely different from Sciambra because liability, and the right to be awarded attorneys’ fees, has yet to be ascertained. To be clear, the plaintiffs’ attorneys are not asking for a hearing to determine the amount of their fees, a perfectly reasonable request. They are asking for a trial to determine liability itself, and therefore any right they may or may not have to be awarded fees in the first place. Unlike in Sciambra, here, the attorneys ask to hold a trial that will involve thousands of attorneys’ hours, exorbitant costs, and an untold amount of judicial expense, all to determine whether or not the attorneys can get paid more than they have already received — with the result having zero impact on the plaintiffs themselves one way or another.
The majority rests much of its argument on the fact that statutory attorneys’ fees are part of the tripartite scheme created by the Clayton Act. While this is certainly a true characterization of the Clayton Act, and would give plaintiffs mandatory attorneys’ fees where liability was determined, the majority overlooks the clear limit of any act of Congress including the Clayton Act — the Constitution. Congress cannot confer standing on the plaintiffs and their attorneys outside the bounds of Article III. It is axiomatic that Article III requires *353 that federal courts may only decide actual cases or controversies and the Supreme Court has clearly established that attorneys’ fees — a byproduct of litigation — are “insufficient to create an Article III case or controversy.” Lewis, 494 U.S. at 480, 110 S.Ct. 1249. If the majority is right, and the Clayton Act requires a trial to determine liability in order to award statutory fees, then as applied, the Act is unconstitutional because it exceeds Congress’ power. The plaintiffs have no personal stake in the outcome of this litigation. The case filed on plaintiffs’ behalf is moot and the plaintiffs’ attorneys have no independent standing to continue the suit. Any attempt to confer such standing on them exceeds the constitutional limits set by Article III.
Unable to point to one Supreme Court case that supports this request for a trial solely for attorneys’ fees, and therefore not able to meet their burden to demonstrate jurisdiction by a preponderance of the evidence, the plaintiffs’ attorneys rest their argument on a warped notion of judicial efficiency under the theory that dismissing this case will deter future settlements. Although such a policy consideration is essentially irrelevant to the constitutional issue of Article III justiciability, the majority adopts this reasoning whole, all while ignoring the multitude of other policy rationales that counsel against letting this suit go forward merely to secure an award of additional attorneys’ fees.
The most damning argument against the plaintiffs’ theory is that, even after all remedies and recovery have been provided by the settlement to plaintiffs, the plaintiffs’ attorneys will continue racking up attorneys’ fees for their personal reimbursement all in an effort to find liability and recoup their spent and on-going costs, with nothing more to be gained for their clients. Once removed from the attorney-client relationship, the lawyers could litigate this case unchecked by any responsibility to represent their clients’ interests. The attorneys here — devoid of the need to placate their clients’ interests or heel at their clients’ orders — could litigate this issue unfettered in pursuit of their personal windfall, and could continue to do so long after they have relinquished any meaningful relationship with the plaintiffs. While plaintiffs’ attorneys’ litigation efforts in the quest for continuous ongoing and reimbursable fees would certainly help deter future anti-competitive actions, it is inconceivable that this is the public benefit scheme intended by the Clayton Act or permitted by the Court’s Article III jurisprudence. One could hardly imagine a greater cudgel to be wielded by plaintiffs’ attorneys to force unmeritorious settlements than the threat of never-ending litigation by attorneys seeking attorneys’ fees for litigating a case about attorneys’ fees.
CONCLUSION
The majority takes great pains to try to distinguish Supreme Court precedent. To get around the clear parallels between this case and that precedent, the majority states in conclusory fashion that this case is different because “the Stewart Settlement only mooted Appellant’s antitrust claims against Stewart, not as against appellees.” Yet the mootness of this appeal, in toto, is exactly the issue before the court and one that the majority glosses over. Because the plaintiffs have no further “personal stake in the outcome” of this case and their attorneys are seeking a trial merely for their own self-interested “byproducts” of litigation, the Constitution and Supreme Court precedent clearly indicate that this case is moot. I respectfully DISSENT.